**IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

TIMOTHY M. BENNETT,

                 Plaintiff/Counter-
                 Claim Defendant

    v.

UNITED STATES OF AMERICA,

                 Defendant/Counter-
                 Claimant

    v.

JOANNE BENNETT

                 Counter-Claim
                 Defendant.
_____/

Case No. 2:09-cv-12352
Judge Gerald E. Rosen

**OPINION AND ORDER ON
<u>CROSS-MOTIONS FOR SUMMARY JUDGMENT</u>**

At a session of said Court, held in
the U.S. Courthouse, Detroit, Michigan
on         December 9, 2010      

PRESENT:  Honorable Gerald E. Rosen
               Chief Judge, United States District Court

## I.  INTRODUCTION

Plaintiff Timothy M. Bennett brought this quiet title action seeking to remove a

federal tax lien filed by the Internal Revenue Service for taxes owed by his mother,

Joanne Bennett.  The Government filed counterclaims arguing that the property at issue

was properly subject to a federal tax lien under either fraudulent conveyance theory or nominee theory.

The action is presently before the Court on Timothy Bennett and the Government's cross-motions for summary judgment. The motions for summary judgment have been fully briefed by Timothy Bennett and the Government.[1]  Having reviewed the briefs and their accompanying exhibits, as well as the record as a whole, the Court finds that the relevant allegations, facts, and legal arguments are adequately presented in these written submissions, and that oral argument would not aid the decisional process. Accordingly, the Court will decide JCI's motion "on the briefs." *See* Local Rule 7.1(f)(2), U.S. District Court, Eastern District of Michigan. This opinion and order sets forth the Court's rulings on this motion.

## II. FACTS

### A.    THE COOLEY BEACH PROPERTY

This case arises out of the Internal Revenue Service's ("IRS's") collection activities regarding taxpayer Joanne Bennett.   To secure the tax debts owed by Ms. Bennett, the IRS filed a notice of federal tax lien against Plaintiff Timothy Bennett (hereinafter "Bennett") as Joanne Bennett's nominee. Through the present action filed on June 17, 2009, Bennett seeks quiet title to real estate that is subject to the nominee lien.

In late 2003, Gary Bennett, Plaintiff Timothy Bennett's father, decided to move to Florida. He needed to sell his house located at 8787 Cooley Beach Drive in White Lake

---

[1]  Joanne Bennett was joined as a cross-claim defendant, but has yet to file an appearance in this case.

Township, Michigan (hereinafter "the Cooley Beach property"), so he enlisted the help of his ex-wife, Joanne Bennett, who was self-employed as a real estate agent at the time. Timothy Bennett decided to purchase the house from his father with the intent to then rent it out to his mother, Joanne, who had recently learned that she had to move out of the apartment she was then renting.

Timothy Bennett and Gary Bennett agreed to a purchase price of $205,000 for the Cooley Beach property.[2]  On or about, August 27, 2003, they signed a purchase agreement.  Timothy Bennett and Joanne Bennett agreed that she would live at the Cooley Beach property and pay Timothy Bennett $600 a month and pay the property taxes for the house.  They did not sign a lease agreement reflecting this arrangement.

At the closing of the sale on October 1, 2003, Joanne Bennett told her son that she should have her name listed on the closing documents as a co-owner for purposes of obtaining a Michigan homestead property tax exemption even if Timothy Bennett was paying the full purchase price.  The Michigan homestead property tax exemption is an exemption from the property tax levied by local school districts for school operating expenses.  It is an exemption that is only available for property that is used as its owner's principal residence.  Mich. Comp. Laws § 211.7cc; *see also* Mich. Comp. Laws §

---

[2]      The purchase agreement, warranty deed and other closing documents all list the purchase price of $155,000, but Timothy Bennett and Gary Bennett testified that they agreed on a $205,000 purchase price.  It appears that Timothy Bennett actually paid $205,000 at the closing in the form of two checks: one for $155,000, which was issued directly to Title Source, Inc., and one for $50,000, which was made out to Gary Bennett.  It is not clear why the transaction was structured in this way.

Timothy Bennett took out a mortgage on his primary residence in order to complete the purchase.

211.7a(3). Since Joanne Bennett planned to live at the property and Timothy did not, she explained that she would have to appear as a co-owner to claim the exemption. Timothy Bennett agreed and Joanne was included as a co-owner on both the closing documents and deed. In an affidavit attesting to the use of the property as a homestead, Joanne and Timothy Bennett each certified "under penalty of perjury, that I own (co-own) and occupy the [Cooley Beach property] as my principal residence, that I am filing an affidavit for only one dwelling, and that all information is true to the best of my knowledge." (Gov't Ex. 10.) Timothy Bennett later testified that he relied on Joanne Bennett as his real estate agent, mother and fiduciary to handle the purchase transaction. He testified that he believed that by signing the homestead affidavit, or "homesteading," Joanne Bennett was simply attesting to the fact that she planned to live at the property. (Timothy Bennett Dep. 25:14-18, 42:17-25.) Following the closing, Timothy Bennett began renting out the house to Joanne Bennett as agreed. Joanne was to pay $600 per month. Timothy paid maintenance costs, which were mostly minor. When Joanne did any maintenance or bought updated appliances for the house, she would deduct the costs from her monthly rent.

In the summer of 2005, Timothy Bennett and his wife Ann Marie Bennett divorced. As part of the judgment in his divorce case, Timothy Bennett represented that the Cooley Beach property was jointly owned by Joanne Bennett and himself. The parties agreed that his interest in it was not marital property.

In September 2005, Timothy Bennett asked his brother, Kevin Bennett, an attorney, to draft a quitclaim deed conveying the Cooley Beach property from Timothy

4

Bennett and Joanne Bennett as tenants in common to Timothy Bennett and Joanne Bennett as joint tenants with rights of survivorship.[3] The quitclaim deed was executed and recorded with the Oakland County Register of Deeds on December 13, 2005.

In June 2006, the parties prepared another quitclaim deed conveying the property from Timothy Bennett and Joanne Bennett to Timothy Bennett alone. It was executed and recorded with the Oakland County Register of Deeds on August 8, 2006. Through this quitclaim deed, Timothy Bennett and Joanne Bennett granted their interest in the Cooley Beach property to Timothy Bennett alone. The deed states that it was executed for the full consideration of one dollar, but both Timothy Bennett and Joanne Bennett testified that no consideration was given in exchange for this transfer. He further testified that he was merely trying to "clean up the title" to the property in the wake of his divorce. (Timothy Bennett 62:23-25.) "I was trying to get everything straightened out so I could move on with the title. . . . [Joanne Bennett] should never have been on [the deed] to start with." (Timothy Bennett Dep. 63:1-4.)

## B.    JOANNE BENNETT'S FEDERAL TAX LIABILITIES

Prior to and concurrent with these real estate transactions, Joanne Bennett's financial situation was deteriorating. She seldom paid the $600 rent in full and did not pay any property taxes as she had agreed. Timothy Bennett learned of the delinquent

---

[3] Timothy Bennett could not recall precisely why the first quitclaim deed was prepared. When asked at deposition why the deed was executed, he responded, "For the tenants in common, it's something that was recommended to me, tenants in common to joint tenants." (Timothy Bennett Dep. 59:12-13.)

property tax sometime in early 2006, after checking with the tax assessor.[4]  He then paid

the property taxes himself.  Joanne told her son that she could not pay because she was

experiencing financial problems and that she would pay as much rent as she could afford.

For a period of about a year, Joanne Bennett paid no rent, as she recovered from a

hospitalization.

Joanne Bennett did not file federal income tax returns between 1999 and 2007.

IRS account transcripts show that the IRS began contacting Joanne Bennett in 2002,

requesting that she file her delinquent federal income tax returns.  (Pl.'s Mot. for Summ.

J. Ex. K.)  In early 2007, after she had transferred the Cooley Beach property to Timothy

Bennett and upon the urging of a friend, Joanne Bennett filed her delinquent tax returns.[5]

No payments were made with these returns.  On January 12, 2007, Citibank obtained a

judgment against Joanne Bennett in the amount of $19,634.92, and on April 26, 2007,

Chase Bank obtained a judgment against her in the amount of $12,697.73.  By May 12,

2007, Joanne Bennett had no assets.  On May 15, 2007, her checking account had a

deficit balance of eighteen dollars.

On February 19, 2007, March 5, 2007, and August 6, 2007, a delegate of the

Secretary of the Treasury of the United States made assessments of unpaid federal

---

[4]  Bennett was prompted to check about the status of the property taxes since he knew his mother
was having financial difficulty and he read that property taxes must be paid within two years of
their assessment.  Joanne Bennett testified that the decision to deed the property to Timothy
Bennett alone was in part motivated by her failure to pay these taxes.  She recalled the phone call
in which he told her he wanted to clean up title:  "He was just upset.  I didn't fulfill my part of
our bargain and my name was only on there for the homestead exemption and since he had to
pay the taxes—he had to pay late charges and everything so he wanted me off of there."  (Joanne
Bennett Dep. 60:4-8.)

[5]  Timothy Bennett testified that he first learned of his mother's tax liabilities around this time.

income taxes against Joanne Bennett for the tax years of 2000 through 2006. The Government sent notice and demand for payment of these assessments to Joanne Bennett. The total unpaid balance on these assessments with accrual as of April 26, 2010, was $111,850.57.[6] These assessments gave rise to liens in favor of the United States against all of Joanne Bennett's property and rights to property. *See* 26 U.S.C. §§ 6321, 6322.

On December 31, 2007, a year and a half after signing the June 30, 2006 quitclaim deed, Joanne Bennett filed a Chapter 7 bankruptcy petition in this Court. (Joanne Bennett Dep. 45:21-25; Gov't Ex. 19, Joanne Bennett bankruptcy petition dkt. #1, Case No. 07-66537, Bankr. E.D. Michigan.) In her bankruptcy petition, Joanne Bennett reported total assets in the amount of $2,240 and total liabilities in the amount of $163,827.53. She also reported having a monthly average income of $1,566.56 and average monthly expenses in the amount of $1,856.67.

In 2008, IRS Officer Lynsey Taulbee investigated and concluded that Joanne Bennett had no ability to pay the tax liability and recommended that her accounts be posted as not collectible. Joanne Bennett signed a collection information statement that was submitted to the IRS on August 16, 2007. In this statement, she attested that her only assets were $800 in her checking account and a life insurance policy with a cash surrender value of approximately $4,000. Officer Taulbee's general manager, Corinne Skerrett, advised Taulbee to search for other possible property which the IRS could seize from Joanne Bennett. After discovering the June 30, 2006 quitclaim deed, and reviewing utilities and maintenance bills, Taulbee concluded that the Cooley Beach property had

---

[6] Interest and other statutory additions continue to accrue.

been transferred to Timothy Bennett as Joanne Bennett's nominee.  Officer Taulbee filed a Notice of Federal Tax Lien and recorded it in the Oakland County Register of Deeds office on March 23, 2009.  The recorded lien asserts provides:

> As provided by section 6321, 6322, and 6323 of the Internal Revenue Code, we are giving a notice that taxes (including interest and penalties) have been assessed against the following-named taxpayer [Timothy Bennett as nominee or transferee of Joanne Bennett].  We have made a demand for payment of this liability, but it remains unpaid.  Therefore, there is a lien in favor of the United States on all property and rights to property belonging to this taxpayer for the amount of these taxes, and additional penalties, interest, and costs that may accrue.

(Gov't Ex. 4.)

Joanne Bennett testified that she never told her son about her tax liabilities and that she believed her son first learned of the liabilities on March 3, 2009, when Timothy accompanied her to a meeting with IRS Officer Taulbee.  In June or July of 2009, Timothy Bennett asked Joanne to vacate the Cooley Beach property.  He testified that "she hadn't been paying rent and I couldn't afford her living there anymore."  (Timothy Bennett Dep. 42:11-13.)  Timothy Bennett is now leasing the property to James T. Faber and Timothy N. Faber, who are unrelated to him.

## C.   PROCEDURAL HISTORY

Bennett filed the present action on June 17, 2009, then an Amended Complaint on March 3, 2010, seeking: (1) quiet title to the Cooley Beach property pursuant to 28 U.S.C. § 2410(c); and (2) the imposition of a constructive trust upon the Cooley Beach property in favor of himself.   Specifically, he argues that Joanne Bennett never had a *beneficial* interest in the house and thus did not convey it to her son as a nominee.

The Court granted leave to join Joanne Bennett as a necessary party on April 21, 2010. The Government filed a counter-claim against both Timothy and Joanne Bennett the same day arguing that: (1) the transfer of the Cooley Beach property from Joanne Bennett to Timothy Bennett constituted a fraudulent transfer—either constructive or actual; or, in the alternative, (2) Timothy Bennett holds title to the property merely as a "nominee" of Joanne Bennett and thus cannot claim a legal interest in the house. Joanne Bennett has not filed an appearance in this case, and a clerk's entry of default was entered against her on August 5, 2010.

This case is presently before the Court on two motions for summary judgment, both filed on May 14, 2010. Timothy Bennett seeks summary judgment in his favor on his two claims, while the Government seeks summary judgment in its favor on its counterclaims.[7]

---

[7] The Government previously filed a motion for partial summary judgment on February 1, 2010. The Court denied this motion in an Opinion and Order dated March 3, 2010. The Court also granted Plaintiff an opportunity to file an Amended Complaint. Plaintiff now argues that the Government has violated Local Rule 7.1(b) by failing to obtain leave of the Court before filing a second motion for summary judgment. Local Rule 7.1(b)(2) provides: "A party must obtain leave of court to file more than one motion for summary judgment. For example, a challenge to several counts of a complaint generally must be in a single motion." Local Rule 7.1, U.S. District Court, Eastern District of Michigan. Here, because the oversight appears to have been inadvertent, because this is not the type of litigation tactic that Rule 7.1 was intended to avoid and because the Government is asserting arguments regarding the Amended Complaint that are distinct from the arguments asserted in the first motion for summary judgment, the Court will excuse this apparent violation.

# III. ANALYSIS

## A. STANDARDS APPLICABLE TO THESE MOTIONS

Through the present motions, Timothy Bennett and the Government seek summary judgment in their favor on Timothy Bennett's claims and on Defendant's counterclaims. Under the pertinent Federal Rule, summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). As the Supreme Court has explained, "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986). In addition, where a moving party—here, both parties—seeks an award of summary judgment in its favor on an issue as to which it bears the burden of proof, this party's "showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir.1986) (internal quotation marks, citation, and emphasis omitted).

In deciding a motion brought under Rule 56, the Court must view the evidence in a light most favorable to the nonmoving party. *Pack v. Damon Corp.*, 434 F.3d 810, 813 (6th Cir. 2006). Yet, the nonmoving party "may not rely merely on allegations or denials in its own pleading," but "must-by affidavits or as otherwise provided in [Rule 56]—set

out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2). Moreover, any supporting or opposing affidavits "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated." Fed. R. Civ. P. 56(e)(1). Finally, "the mere existence of a scintilla of evidence that supports the nonmoving party's claims is insufficient to defeat summary judgment." *Pack*, 434 F.3d at 814 (alteration, internal quotation marks, and citation omitted).

## B.    QUIET TITLE ACTION

Timothy Bennett seeks quiet title to the Cooley Beach property and foreclosure of the federal tax lien that the Government placed on the property. Citizens of the United States may bring an action to quiet title for land in which the United States claims an interest by virtue of a lien or otherwise. *See* 28 U.S.C. § 2410. Such actions may be brought in federal district court. *Id.* To succeed on a quiet title action, a plaintiff must establish a *prima facie* case of title to the disputed property. *See Sumpter v. United States*, 302 F. Supp. 2d 707, 719 (E.D. Mich. 2004). If the plaintiff establishes a *prima facie* case, the burden of proof shifts to the defendant to show it has superior right to the property. *Id.* It is well established that while state law governs the question of whether a taxpayer has an interest in property, federal law controls the attachment of a federal tax lien to that property. *United States v. National Bank of Commerce*, 472 U.S. 713, 722, 105 S. Ct. 2919, 2925 (1985); *United States v. Rodgers*, 461 U.S. 677, 103 S. Ct. 2132 (1983).

In this case, there is no dispute that Timothy Bennett has come forward with satisfactory evidence of title to the Cooley Beach property. Therefore, the burden shifts to the Government to prove the superiority of its interest in the Cooley Beach property by virtue of its federal tax lien. The Internal Revenue Code provides for federal tax liens through 26 U.S.C. § 6321:

> If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount (including any interest, additional amount, addition to tax, or assessable penalty, together with any costs that may accrue in addition thereto) shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person.

26 U.S.C. § 6321. Section 6322 provides that "the lien imposed by section 6321 shall arise at the time the assessment is made and shall continue until the liability for the amount so assessed (or a judgment against the taxpayer arising out of such liability) is satisfied or becomes unenforceable by reason of lapse of time." 26 U.S.C. § 6322. The purpose of the federal tax lien "is to insure prompt and certain collection of taxes due the United States from tax delinquents." *United States v. Security Trust & Sav. Bank*, 340 U.S. 47, 51, 71 S. Ct. 111 (1950).

The Government argues that the federal tax lien at issue in this case is properly asserted to satisfy the tax liabilities of Joanne Bennett based on either: (1) fraudulent conveyance theory; or (2) nominee theory. While federal tax liens do not reach property that a taxpayer transferred before the lien arose, the Government may rely on fraudulent transfer laws of the state where the property is located to set aside a fraudulent transfer to the extent necessary to satisfy the Government's tax debt. *Sumpter*, 302 F. Supp. 2d at

720.  Similarly, while a federal tax lien does not attach to property not owned by the taxpayer under state law, it is well-established that a taxpayer's "rights to property" under § 6321 can include assets held by the taxpayer's nominee, transferee or alter ego.  *G.M. Leasing Corp. v. United States*, 429 U.S. 338, 350-51, 97 S. Ct. 619 (1977) (broadly interpreting § 6321 to include not only the property and rights to property owned by the delinquent taxpayer, but also property held by a third party if it is determined that the third party is holding the property as a nominee or alter ego of the delinquent taxpayer); *see also, e.g.*, *In re Richards*, 231 B.R. 571, 578 (Bankr. E.D. Pa. 1999) (finding that the nominee theory stems from equitable principles, which attempt "to discern whether a taxpayer has engaged in a sort of legal fiction, for federal tax purposes, by placing legal title to property in the hands of another while, in actuality, retaining all or some of the benefits of being the true owner").[8]

### 1.  Joanne Bennett's Interest in the Cooley Beach Property

---

[8]  The factual basis for each theory is similar, but distinct.  This distinction was explained in *Smith v. United States*, No. C 06-06103, 2007 WL 2554142 (N.D. Cal. Sept. 4, 2007), analyzing substantially similar standards under California law:

> Fraudulent transfer requires pleading elements in addition to what is required to demonstrate that a transfer was made to a nominee.  A nominee theory focuses on whether or not the taxpayer is the true beneficial owner of the property based on how the taxpayer treats the property.  *Oxford Capital Corp. v. United States*, 211 F.3d 280, 284 (5th Cir. 2000).  A fraudulent conveyance theory looks at the conditions at the time of the conveyance, and whether the transfer was affected with the intent of preventing a creditor from collecting on its interests.  *Kirkeby v. Sup. Ct.*, 33 Cal.4th 642, 648, 15 Cal.Rptr.3d 805, 93 P.3d 395 (2004).  Fraud is not necessarily required to prove a nominee theory under California law.  *Sequoia Property & Equip. v. United States*, 1998 WL 471643, *3 (E.D. Cal.1998) (Wanger, J.).FN212

*Id.* at *3.

In this case, the Government argues that the conveyance of the Cooley Beach property from Timothy and Joanne Bennett to Timothy alone was either actually or constructively fraudulent. Plaintiff's primary rebuttal is that Joanne Bennett never had an interest in the Cooley Beach property to convey to her son. The Court addresses the issue of Joanne Bennett's interest in the property as a threshold matter, then turns to the Government's theories of fraudulent conveyance below.

Under the current record, there is no question that Joanne Bennett possessed legal title to the Cooley Beach property between 2003 and 2006. She acquired an undivided half of the Cooley Beach property on October 1, 2003, when Gary Bennett delivered a warranty deed conveying the property to Joanne and Timothy Bennett as tenants in common. Mich. Comp. Laws §§ 565.151 (providing form of warranty deed necessary to be a good and sufficient conveyance to the grantee as a conveyance in fee simple); 554.44 (providing that any conveyance of land made to two or more persons, except as otherwise provided, shall be construed to create estates in common). *See also Warson v. Warson*, No. 283401, 2009 WL 1564535, at *2 (Mich. Ct. App. June 2, 2009). Plaintiff admits that he agreed to include Joanne Bennett as a co-owner of the property at the closing so that the property could qualify for the homestead tax exemption. He signed an affidavit on October 1, 2003, in which he certified under penalty of perjury that Joanne Bennett co-owned the property. Joanne Bennett's interest became enforceable against subsequent purchasers on October 15, 2003, when the warranty deed was recorded. Mich. Comp. Laws § 565.29. Timothy Bennett re-affirmed this co-ownership arrangement when he represented to the Oakland County Circuit Court in his divorce

case that Joanne Bennett was a co-owner of the Cooley Beach property. Finally, on September 30, 2005, Joanne Bennett acquired a survivorship interest in the Cooley Beach property when she and Timothy Bennett signed and delivered to each other a quit claim deed granting themselves the property as joint tenants with rights of survivorship. Mich. Comp. Laws § 565.152 (providing form of quit claim deed necessary to be a good and sufficient conveyance to the grantee); *see also Albro v. Allen*, 434 Mich. 271, 276, 454 N.W.2d 85, 88 (1990).

In spite of the foregoing, Timothy Bennett argues that Joanne Bennett never held anything more than a barren legal title. She did not have a "beneficial interest" in the property since she paid no consideration for the property, paid no property taxes and paid no maintenance costs (although the record indicates that she arranged to have the house rewired and purchased appliances, it appears that she deducted such costs from her monthly rent).[9] He argues that Joanne Bennett cannot be the "true and equitable" owner of the property since she merely rented it until Timothy dispossessed her of that right. Without deciding whether Joanne Bennett lacked any beneficial interest in the property, Plaintiff has failed to cite any case law indicating how a lack of beneficial interest nullifies or otherwise removes a legal interest for purposes of tax collection actions. Moreover, under Michigan law, even if a deed was intended to serve some "practical, outcome-oriented functions," as in this case to qualify for a homestead tax exemption, when the deed has been signed and recorded, it grants a legal interest in the house to the

---

[9] Beneficial interest is "[a] right or expectancy in something (such as a trust or an estate), as opposed to legal title to that thing." Black's Law Dictionary (8th ed. 2004).

grantee. *Blackwell v. Blackwell*, No. 255717, 2005 WL 2573348, at *2 (Mich. Ct. App. Oct. 13, 2005) (holding that, although original homeowner only deeded house to a family-member as co-owner as part of her estate plan, such deed created a property interest in the grantee).

Timothy Bennett further argues that Michigan courts look to "substance, not form," to determine who is the real owner of property for tax purposes. (*Id.*) (citing *United Artists Corp. v. Dep't of Treasury*, 66 Mich. App. 289, 238 N.W.2d 841 (1975); *National Music Camp v. Green Lake Twp.*, 76 Mich. App. 608, 614 (1977)). In *United Artists*, the court considered whether to rely exclusively on a taxpayer's corporate records to determine if a corporate taxpayer owned contracts with independent film producers. In *National Music Camp*, the court looked to whether use of land by a corporate operator of summer music camp in summer and by corporate operator of high school during school year was entitled to tax exemption. Neither case involves questions of title to real property or indeed duly conveyed and recorded deeds to that property. In this case, legal title to the Cooley Beach property was passed to Joanne Bennett through a warranty deed, then again in a quit claim deed. The fact that she sporadically paid rent to her son to then live in the house and was later asked to vacate the property, does not support a finding that she did not have a legal interest in the property for tax purposes.

Finally, Plaintiff invokes the reasoning set out in *United States v. Miller*, No. 07-11700, 2009 WL 3335928 (E.D. Mich. 2009), for the proposition that "substance title" never passed to Joanne Bennett. In *Miller*, the defendant, Darryl Miller, entered into a land contract with Franklin Fox to purchase a parcel of real property. *Id.* at *1. After

failing to make timely payments, Mr. Miller and Mr. Fox agreed that Mr. Miller would make a one-time $22,000 payment in satisfaction of the land contract and that Mr. Fox would deliver to Mr. Miller a deed to the property. *Id.* At this time, Mr. Miller had a substantial federal tax debt. *Id.* A handwritten note appeared on the closing agreement signed by the parties indicating that deeds were issued to both Mr. Miller and his mother. *Id.* Only the deed to Mr. Miller's mother was provided to the government during discovery. *Id.* Neither deed was recorded. *Id.* at *2. The court made the factual finding, based on the handwritten note, that a deed was issued to Mr. Miller conveying the property to Mr. Miller and that the deed had been delivered to him and accepted. *Id.* at *5-6. Based on this finding the Court determined that Mr. Miller had an interest in the property to which the government's liens attached. *Id.* The Court also found that Mr. Miller's mother held title to the property as Mr. Miller's nominee and, even if Mr. Miller's mother was the true owner of the property, she took title subject to the government's liens, which attached to the property under the land contract. *Id.* at *7.

As the Government points out, the only similarity between the present case and *Miller* is that both Timothy Bennett and Mr. Miller paid the full purchase price for a house and both involved their mothers in some form of conveyance or attempted conveyance. Unlike *Miller*, Timothy Bennett admits that he agreed to have the property deeded to his mother to claim a homestead property tax exemption. He knowingly accepted the warranty deed conveying the property to both Timothy Bennett and Joanne Bennett and had the deed duly recorded. He held his mother out as a co-owner to secure the exemption, then again in his divorce proceedings. Ultimately, while Plaintiff disputes

his motive or intent in deeding the property to his mother, he does not dispute the legal effect of the deeds in this case or his prior admissions in affidavits and in the divorce court proceeding. [10]

Having reviewed the parties arguments, the Court finds that even if there is some question as to Joanne Bennett's beneficial interest in the property, there is no question that she possessed legal title for the period between 2003, when she signed the closing documents and was deeded the property by her ex-husband as a tenant in common, and 2006, when she deeded the property to her son. Accordingly, Joanne Bennett possessed a sufficient property interest to have the ability to convey something of value to her son. The Court turns to examining whether that conveyance was fraudulent.

### 2. Fraudulent Transfer

In Michigan, the law of fraudulent conveyance is codified at Mich. Comp. Laws § 566.31 *et seq.*, largely adopting the Uniform Fraudulent Transfer Act (UFTA). The UFTA was designed to protect creditors against debtors who transfer their property in a manner that impairs creditors' rights. *In re Michigan Machine Tool Control Corp.*, 381 B.R. 657, 667 (Bankr. E.D. Mich. 2008). Under the UFTA, a creditor can bring a cause of action alleging that a transfer was fraudulent under either Mich. Comp. Laws §§ 566.34 or 566.35. Section 566.34 defines a cause of action where the debtor made the transfer with the intent to hinder, delay or defraud any creditor of the debtor, or without

---

[10] Plaintiff separately argues that the only way in which Joanne Bennett could have acquired an interest in the Cooley Beach property is if she: (1) paid consideration for an interest in the property; or (2) received an interest as a gift. Plaintiff does not cite any case law in support of this theory and the Court has found none.

receiving reasonably equivalent value. *Szkrybalo v. Szkrybalo*, 477 Mich. 1086, 1086, 729 N.W.2d 233 (2007) (actual fraud). Specifically, section 566.34(1) provides:

> A transfer . . . is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made . . ., if the debtor made the transfer . . . in either of the following:
>
> (a) With actual intent to hinder, delay, or defraud any creditor of the debtor.
> (b) Without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor did either of the following:
>
> > (i) Was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction.
> >
> > (ii) Intended to incur, or believed or reasonably should have believed that he or she would incur, debts beyond his or her ability to pay as they became due.

Mich. Comp. Laws § 566.34(1). Section 566.35 defines a cause of action where the creditor's claim against the debtor arose before the fraudulent transfer and the debtor was insolvent or did not receive a reasonably equivalent value, or if the transfer was made to an insider, the debtor was insolvent and the transferee knew the debtor was insolvent. *Estes v. Titus*, 273 Mich. App. 356, 377 n. 5, 731 N.W.2d 119 (2006) (constructive fraud); *see also Detroit & Security Trust Co. v. Gitre*, 254 Mich. 66, 74-75, 235 N.W. 884 (1931) (holding that transfer of real property from father to son for inadequate consideration is fraudulent as to father's existing creditor). Under either section, a claim of fraud must be supported by clear and convincing evidence, *see, e.g.*, *Hi-Way Motor Co. v. Int'l Harvester Co.*, 398 Mich. 330, 336, 247 N.W.2d 813 (1976), though such evidence may be circumstantial, *see Foodland Distributors v. Al-Naimi*, 220 Mich. App.

453, 458, 559 N.W.2d 379 (1996) (citing *Goldberg v. Goldberg*, 295 Mich. 380, 384, 295 N.W. 194 (1940)).

### a. Actual Fraud

The Government may show "actual intent" with circumstantial evidence. *United States v. Leggett*, 292 F.2d 423, 426 (6th Cir. 1961) (holding that it is not possible to look into a debtor's mind for the purpose of ascertaining intent); *see also Bentley v. Caille*, 289 Mich. 74, 286 N.W. 163, 164 (1939) (holding that "the only method of determining actual intent is by a consideration of the circumstances surrounding the transaction"). Under the UFTA as adopted in Michigan, such circumstantial evidence or "badges of fraud" may include:

(a) The transfer or obligation was to an insider.

(b) The debtor retained possession or control of the property transferred after the transfer.

(c) The transfer or obligation was disclosed or concealed.

(d) Before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit.

(e) The transfer was of substantially all of the debtor's assets.

(f) The debtor absconded.

(g) The debtor removed or concealed assets.

(h) The value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred.

(i) The debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred.

(j) The transfer occurred shortly before or shortly after a substantial debt was incurred.

(k) The debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.

Mich. Comp. Laws § 566.34(2).  Here, the Government argues that the transfer of the Cooley Beach property bears the "badges of fraud" that indicate actual intent to defraud. Specifically, the Government notes that: (1) the transfer occurred between family members, from mother to son; (2) Joanne Bennett continued to use the property after it was transferred to her son's name, between 2006 and June 2009; (3) she concealed the transfer from the IRS by certifying under penalty of perjury on her August 16, 2007 collection information form that she had not transferred any assets out of her name in the last ten years for less than their action value; (4) the transfer was made at a time when she faced possible litigation from creditors and when she knew she had outstanding tax liabilities; (5) the transfer placed her only asset of significant value out of her creditors' reach; (6) she was insolvent or became insolvent around the time that the transfer was made; and (7) the transfer occurred several months after the IRS sent her notice of her delinquent tax returns and several months before she received the IRS tax assessments for tax years 2000 through 2006.

Bennett argues that there is no direct evidence that Joanne Bennett had an actual intent to defraud the Government or evade her tax obligations.  Joanne testified that she was not thinking of a tax lien arising from her delinquent tax returns when she executed the June 30, 2006 quit claim deed to the Cooley Beach property.  Indeed, the record

suggests that Timothy Bennett, not Joanne, initiated the quitclaim process because he was frustrated with his mother's inability to pay rent or property taxes as they had agreed. Both he and she testified that he did not learn about his mother's tax liabilities until well after the conveyance. Bennett also argues that because his mother has only a high school education, "it is completely unreasonable to expect her to understand the workings of a tax lien." (Pl.'s Reply to Def.'s Mot. for Summ. J. at 16.) "Had Joanne Bennett understood that the filing of her delinquent income tax returns would raise a tax lien against all of her property and interests in property, she never would have allowed her name to be placed on the title to the [Cooley Beach] property in the first place." (*Id.*)

Although cases involving questions of intent are not necessarily inappropriate for summary judgment, *see Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989), it is "seldom appropriate in cases where the parties' intentions or states of mind are crucial elements of the claim because of the likelihood of self-serving testimony and the necessity for the fact-finder's credibility determination." *Johnson v. Jones*, 885 F. Supp. 1008, E.D. Mich. (1995) (citing *60 Ivy Street v. Alexander*, 822 F.2d 1432, 1437 (6th Cir. 1987); *accord Middleton v. Reynolds Metals Co.*, 963 F.2d 881, 882 (6th Cir. 1992); *Canderm Pharmacal v. Elder Pharmaceuticals, Inc.*, 862 F.2d 597, 601 (6th Cir. 1988); *Smith v. Hudson*, 600 F.2d 60, 66 (6th Cir. 1979)). Here, although the Government has submitted ample circumstantial evidence in support of an actual fraudulent intent determination, Timothy and Joanne Bennett's testimony weighs against such a finding. The Government argues that Timothy and Joanne Bennett's statements about what they intended to accomplish by including Joanne as a co-owner and whether

Joanne Bennett was aware of the tax implications of the quitclaim conveyance are self-serving and thus should not be considered by the Court. However, a plaintiff's testimony in this context will almost always be self-serving. While self-serving testimony need not be taken at face value, it need not be excluded altogether. The Court declines to exclude the testimony here.

Under this factual record, the Court cannot conclude as a matter of law that the second quitclaim deed was executed with actual intent to hinder, delay, or defraud the Government. A reasonable fact-finder could conclude that the Bennetts' testimony is credible and that they knew nothing about the effect of the tax liens on the Cooley Beach property. Alternatively, a reasonable fact-finder could conclude that the Bennetts' testimony is not credible, and that all other circumstantial evidence suggests that Joanne Bennett deliberately sought to place her interest in the Cooley Beach property outside the reach of the Government in light of her looming tax liabilities. Because there appear to be genuine issues of fact as to what the Bennetts, and particularly Joanne Bennett, intended, summary judgment in favor of either party is inappropriate on the fraudulent conveyance/actual fraud claim.

### b. Constructive Fraud

The Government argues that Joanne Bennett's transfer of her interest in the Cooley Beach property to her son amounts to constructive fraud under Mich. Comp. Laws § 566.35(1). Section 566.35 provides:

> A transfer made . . . by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made . . . if the debtor made the . . . without receiving a reasonably equivalent value in exchange for the transfer . . . and

> the debtor was insolvent at that time or the debtor became insolvent as a
> result of the transfer . . . .

Mich. Comp. Laws § 566.35(1).  The Government argues, first, that its claim arose before

the transfer insofar as Joanne Bennett's tax debts for 2000 through 2006 were incurred on

December 31 of each year, due and owing on April 15 of the following year.  *See United*

*States v. Adams Bldg. Co.*, 531 F.2d 342, 343 n.2 (6th Cir. 1976) ("[T]axes are due and

owing on the date on which a tax is due to be filed.").  Second, the Government points

out that Joanne Bennett did not receive any consideration for the transfer of her interest in

the Cooley Beach property.  Although the 2006 quit claim deed states that it was

executed in consideration for one dollar, both Timothy Bennett and Joanne Bennett admit

that she was given nothing in exchange for the transfer.  Third, Joanne Bennett was either

insolvent or became insolvent as a result of the transfer.  "A debtor is insolvent if the sum

of the debtor's debts is greater than all of the debtor's assets at a fair valuation." Mich.

Comp. Laws § 566.32(1).  Additionally, "[a] debtor who is generally not paying his or

her debts as they become due is presumed to be insolvent."  Mich. Comp. Laws §

566.32(2).

Plaintiff argues that "Joanne Bennett did not transfer anything of value" to him,

since he had already paid all of the consideration for the Cooley Beach property and

Timothy Bennett was the "sole beneficial owner" of the property.  (Pl.'s Resp. to Def.'s

Mot. for Summ. J. 20.)  Plaintiff does not dispute that Joanne Bennett had legal title to

the property as a co-owner.  Instead, he argues that bare legal title "has no value

whatsoever."   Finally, Plaintiff argues that under the UFTA, specifically Mich. Comp.

Laws §§ 566.37 and 566.38 (which provide for an action against a fraudulent transfer and limits recovery to the value of the asset transferred), the Government's right to recovery is limited to the value of the property that Joanne Bennett transferred to Timothy Bennett. Because Plaintiff argues that she transferred "nothing of value," Defendant would be entitled to a judgment of nothing.

Here, the Court finds that there is a genuine issue of fact as to whether the bare legal interest Joanne Bennett possessed conveyed something of economic value to Timothy Bennett, such that a federal tax lien filed after the conveyance should reach the entirety of the property.

### 3.     Nominee Theory

The Government argues in the alternative that Timothy Bennett holds the Cooley Beach property as the nominee or transferee of Joanne Bennett.  Timothy Bennett counters that Joanne Bennett never held a beneficial interest in the property and thus cannot have conveyed any interest to Timothy.  He also argues that even if she did convey an interest, it was not as her nominee.  The Court finds Plaintiff's arguments well-taken.

Nominee theory focuses on the relationship between the taxpayer and the property to determine true beneficial ownership of the property.  *Spotts*, 429 F.3d at 253; *Oxford Capital Corp. v. United States*, 211 F.3d 280, 284 (5th Cir. 2000).  "A 'nominee' is a person or entity who holds legal title to property that in truth belongs to another who exercises control over and realizes the benefit of it."  *Sumpter v. United States*, 302 F.

Supp. 2d 707, 720 (E.D. Mich. 2004). Generally, nominee status is determined by the

degree of control that a party exerts over the nominee and the subject property. *Id.*

Although there appears to be no Michigan case law discussing nominee theory by

that name, federal courts in Michigan have consider six factors closely resembling the

"badges of fraud" factors discussed above:

> (1) whether inadequate or no consideration was paid by the nominee; (2)
> whether the property was placed in the nominee's name in anticipation of a
> lawsuit or other liability while the transferor remains in control of the
> property; (3) whether there is a close relationship between the nominee and
> the transferor; (4) whether they failed to record the conveyance; (5) whether
> the transferor retains possession; and (6) whether the transferor continues to
> enjoy the benefits of the transferred property.

*Porta-John of America, Inc. v. United States*, 4 F. Supp. 2d 688, 700 (E.D. Mich. 1998);

*see also Sumpter*, 302 F. Supp. 2d at 721; *United States v. DeTar*, No. 1:04-CV-749,

2009 WL 2252822, at *5 (W.D. Mich. July 28, 2009); Internal Revenue Manual,

5.17.2.5.7 (12-14-2007) ("The factors which are relevant in determining whether such a

situation exists are similar to the factors which are used in deciding whether a taxpayer

has fraudulently conveyed property to keep it from the reach of creditors."). Having

already completed the analysis under the "badges of fraud" factors, the Court concludes

that there is a genuine issue of fact as to whether Defendant Timothy Bennett held the

Cooley Beach property as a nominee of Joanne Bennett.

## IV. CONCLUSION

For the reasons set forth above,

NOW, THEREFORE, IT IS HEREBY ORDERED that Plaintiff's May 14, 2010 motion for summary judgment [Dkt. #32] is DENIED.  IT IS FURTHER ORDERED that Defendant's May 14, 2010 motion for summary judgment [Dkt. #33] is GRANTED as to the limited issue of Joanne Bennett's interest in the Cooley Beach property, and the remainder of Defendant's motion is DENIED.


s/Gerald E. Rosen
Gerald E. Rosen
Chief Judge, United States District Court

Dated: December 9, 2010


I hereby certify that a copy of the foregoing document was served upon counsel of record on December 9, 2010, by electronic mail and upon Joanne Bennett, 1848 Colonial Village Way, Apartment 4, Waterford, Michigan 48328 by ordinary mail.

s/Ruth A.Gunther
Case Manager
(313) 234-5137